IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ADMIRA BEGIC,<br><br>    Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN, Acting<br>Commissioner of Social Security,<br><br>    Defendant. | No. 15 C 6861<br><br>Magistrate Judge Sidney I. Schenkier |

## MEMORANDUM OPINION AND ORDER[1]

In this Social Security appeal, plaintiff Admira Begic moves for reversal or remand of the final decision of the Commissioner of Social Security denying her application for benefits ("Commissioner") (doc. # 19). For the reasons set forth below, we grant Ms. Begic's motion.

### I.

On April 2, 2012, Ms. Begic filed for disability benefits alleging that she became too disabled to work as of May 1, 2009 (R. 88). Her claim was denied initially and on reconsideration, and after two hearings before an Administrative Law Judge ("ALJ"), the ALJ issued an opinion denying Ms. Begic's request for benefits (R. 18). The Appeals Council denied her request for review (R. 1), making the ALJ's ruling the final decision of the Commissioner. *See Loveless v. Colvin*, 810 F.3d 502, 506 (7th Cir. 2016).

In support of her motion, Ms. Begic argues primarily that the ALJ's findings regarding her mental impairments were erroneous and require remand (doc. # 20: Pl.'s Mem. in Supp. of Summ. J. at 8-15). For the reasons that follow, we conclude that remand is necessary on this

---

[1] On August 24, 2015, by consent of the parties and pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, this case was assigned to the Court for all proceedings, including entry of final judgment (doc. # 8).

basis, and we therefore do not reach Ms. Begic's additional arguments for remand. Below, we set forth the evidence relevant to this issue.

## II.

On October 27, 2010, Ms. Begic began regular psychiatric outpatient treatment with Mussarat Y. Zahid, M.D. (R. 659). Dr. Zahid observed that Ms. Begic showed marked anxiety in her psychomotor activity, had poor concentration, and appeared dysthymic (depressed) and dysphoric (anxious, restless, unhappy) (R. 661). Ms. Begic reported suffering headaches, panic attacks, difficulty sleeping, and off and on feelings of hopelessness, helplessness and guilt (R. 660). Dr. Zahid diagnosed Ms. Begic as suffering from severe major depression, panic disorder and migraines (R. 661). Between November 2010 and April 2011, Dr. Zahid added a diagnosis of insomnia and noted that Ms. Begic remained generally depressed, dysthymic, dysphoric, and at least somewhat anxious (R. 642, 645, 652, 654-59, 804, 816). In May 2011, Dr. Zahid added the diagnosis of post-traumatic stress disorder ("PTSD"), but PTSD did not appear again in Dr. Zahid's notes until April 2012 (R. 640).

On April 28, 2011, Ms. Begic had a check-up with her primary care physician, Sinisa Boskovic, M.D., who noted that Ms. Begic was "in no acute distress, pleasant, comfortable, cooperative, interacting appropriately" and had a normal affect (R. 696-97). On May 15, 2011, the report from Ms. Begic's visit to Sherman Hospital for an upper respiratory and ear infection stated that she was cooperative and had appropriate mood and affect as well as normal judgment (R. 517-20).

At her regular appointments with Dr. Zahid from September through December 2011, Dr. Zahid noted that Ms. Begic's concentration remained poor and her psychomotor activity continued to show marked anxiety (R. 650). In addition, in October 2011, Ms. Begic's trouble

2

sleeping and her depression worsened; she reported suffering from nightmares and severe stress (R. 646-49). At Ms. Begic's appointments with Dr. Zahid in February and April 2012, Dr. Zahid's description of Ms. Begic remained largely the same (R. 641, 643-44). However, in February, Dr. Zahid added a prescription for Elavil (for nerve pain and depression), and in April, Dr. Zahid again identified PTSD as a diagnosis for Ms. Begic, along with depression, panic disorder, migraines and insomnia (*Id.*).

On May 2, 2012, Dr. Zahid filled out a mental capacity assessment. She wrote that Ms. Begic was severely depressed, had severe social anxiety, and had severe panic attacks (R. 636-37). Dr. Zahid checked boxes indicating that Ms. Begic had extreme limitations (defined as a "major limitation" in an area where the individual has "no useful ability to function") in understanding and memory and sustained concentration and persistence (R. 635-36). Dr. Zahid indicated that Ms. Begic had extreme and marked limitations (defined as a "serious limitation" in an area where the individual cannot generally perform satisfactorily) in social interaction and adaptation (R. 636-37). The same month, Ms. Begic and her nephew filled out function reports stating that she could not cook, clean, or bathe, but she did laundry and drove alone to shop once a week (R. 282-85). They wrote that Ms. Begic spent time with family and friends but she was fearful of noise and being alone (R. 287-88, 298-304).

From June 2012 through May 2013, Ms. Begic continued to see Dr. Zahid regularly. Dr. Zahid reported that Ms. Begic's depression varied from mild to severe, her mood and affect varied from normal to dysthymic and dysphoric, her concentration varied from poor to good, and her psychomotor activity ranged from within normal limits to showing marked anxiety (R. 639, 782-98). Ms. Begic continued to report having panic attacks and trouble sleeping. Her diagnoses remained major depression (sometimes listed as severe, sometimes not), severe panic disorder,

3

PTSD, insomnia and migraines, and her medications were Elavil, Prozac, Xanax, Topamax (for headache), and at times Remeron (an antidepressant) (*Id.*). During this time, Ms. Begic continued to see Dr. Boskovic with physical complaints, and she visited the emergency room once complaining of chest pain. Records from those visits reported that her mood and affect were appropriate, and she had no symptoms of anxiety or depression (R. 733-39, 746-48, 759, 853).

On November 21, 2012, a non-examining state agency medical consultant opined Ms. Begic had mild restrictions in activities of daily living ("ADLs") and social functioning and no difficulties in concentration, persistence or pace (R. 102-03). On March 25, 2013, Dr. Zahid filled out a residual functional capacity ("RFC") questionnaire, stating that Ms. Begic was severely depressed and had panic attacks, nightmares and severe headaches, all of which constantly interfered with her attention and concentration (R. 768).

On August 15, 2013, at the first hearing before the ALJ, psychologist Kathleen O'Brien, Ph.D., testified as a medical expert (R. 169, 975). She had reviewed Dr. Zahid's reports through June 2012 and found no explanation for why Dr. Zahid diagnosed PTSD or why Dr. Zahid did not change Ms. Begic's treatment plan in light of her continued severe mental impairments (R. 975-76). Dr. O'Brien saw a conflict between Dr. Boskovic's records -- which did not indicate that Ms. Begic displayed severe mental impairments -- and Dr. Zahid's records (R. 975-76). The ALJ continued the hearing so that Ms. Begic could submit additional records from Dr. Zahid and receive a new psychological consultative examination ("CE") (R. 980).[2]

On October 2, 2013, Michael E. Stone, Psy.D., performed a psychological CE (R. 834). Ms. Begic reported that she had PTSD after witnessing the war in Bosnia (*Id.*). Dr. Stone noted that Ms. Begic was "minimally cooperative," and her behavior was "pained and distracted, but

---

[2] A second medical expert, Ashok Jilhewar, M.D., testified at the hearing regarding Ms. Begic's physical impairments. Dr. Jilhewar reviewed the evidence of Ms. Begic's left wrist pain, migraine headaches, vertigo and mild COPD and concluded that Ms. Begic did not meet a listing level for physical impairments (R. 988-91).

4

essentially appropriate" (R. 835). She was tearful, her affect was depressed but appropriate, and her mood appeared anxious, dysthymic and dysphoric (*Id.*). Dr. Stone listed her diagnoses as PTSD, major depression and generalized anxiety disorder with panic attacks (R. 837). He opined that Ms. Begic had moderate restriction in ability to understand, remember and carry out complex instructions; moderate restriction in ability to interact appropriately with supervisors, co-workers and the general public; and moderate restriction in ability to adjust to changes in the work setting (R. 839-40).[3] Dr. Stone also assessed Ms. Begic as being unable to "manage benefits in [her] own best interest" (*Id.* at 841).

Ms. Begic continued to see Dr. Zahid regularly from August 2013 through February 2014, continuing to observe dysthymia, dysphoria, marked anxiety and poor concentration; and diagnosing major depression, panic disorder, PTSD, and migraines (R. 782, 857-60). Ms. Begic's medications were consistently listed as Xanax, Topamax, and Prozac, with occasional additions of Remeron, Elavil, and/or trazodone (a sedative and antidepressant) (R. 857-60, 887-90). On December 18, 2013, Dr. Zahid completed another mental capacity assessment for Ms. Begic. Dr. Zahid listed Ms. Begic's diagnoses as severe depression, severe panic attacks, severe insomnia and PTSD (R. 884). She checked boxes indicating that Ms. Begic had extreme limitations in every area: understanding and memory, sustained concentration and persistence, social interaction, and adaptation (R. 882-84). Ms. Begic saw Dr. Boskovic at least twice during the second half of 2013 for physical complaints, and his reports continued to indicate that Ms. Begic was normal, pleasant, cooperative, and interacting appropriately (R. 844-46, 849-50).

On February 25, 2014, the ALJ held a supplemental hearing. After the ALJ received testimony on Ms. Begic's physical impairments, Mark I. Oberlander, Ph.D., a specialist in

---

[3]The form Dr. Stone completed defined a moderate restriction as "more than a slight limitation," but one where "the individual is still able to function satisfactorily" (R. 839).

5

clinical psychology, testified on Ms. Begic's mental impairments (R. 54, 228). He found "great variance" between the "objective medical evidence in individual encounters with" Dr. Zahid and "the summary measures" and opinions that Dr. Zahid provided (R. 56-57). Dr. Oberlander explained that an individual with extreme limitations in all work-related areas would require hospitalization or at least custodial care, which Dr. Zahid never recommended for Ms. Begic (*Id.*). Dr. Oberlander also found it "of great note" that Dr. Zahid did not mention PTSD symptomology when he first saw Ms. Begic (R. 58). Nevertheless, acknowledging that Ms. Begic had symptoms of anxiety and depression,[4] Dr. Oberlander concluded that Ms. Begic could perform "work activities that are simple, routine, [and] repetitive," in a "work setting [that] should only involve occasional contact, interaction of a non-intimate nature with coworkers, supervisors, and the public" (R. 59-60).[5]

Ms. Begic testified (through an interpreter) that she was often tearful and scared to be left alone; she had difficulty breathing and chest pain around strange people and in crowds (R. 71-73, 75). She testified that she had flashbacks every day and night about the war in Bosnia, making it hard to sleep at night and concentrate during the day (R. 73-77). Ms. Begic also said that she had migraines four times per week, lasting two to three hours at a time, which left her feeling broken, weak and nauseated (R. 79-80).

---

[4]Dr. Oberlander also noted that the ALJ had recalled that at the hearing in August 2013, Ms. Begic had asked for the door to remain open (R. 61). Dr. Oberlander stated that this indicates that Ms. Begic might have an issue with claustrophobia, but claustrophobia was not documented in the record (R. 55).

[5]In addition, Dr. Oberlander stated that because English is not Ms. Begic's native tongue, work instructions should not be presented in writing (R. 60).

## III.

On April 9, 2014, the ALJ issued an opinion finding that Ms. Begic was not disabled.[6] The ALJ determined that Ms. Begic had the following severe impairments: migraines, status post left wrist fracture, COPD, left forearm pain, benign vertigo and dizziness, complex regional pain syndrome in the left arm, affective disorder and anxiety disorder (R. 23). The ALJ found that Ms. Begic also had PTSD, but that this impairment was not severe because it caused no more than minimal limitation in her ability to perform basic work activities, and there was "no documentation of this diagnosis of the file for any durational period as required under the regulations" (*Id.*).

The ALJ found Ms. Begic's statements concerning the intensity, persistence and limiting effects of her symptoms "not entirely credible" (R. 26-27). Despite Ms. Begic's testimony to the contrary, the ALJ assessed Ms. Begic with mild restriction in ADLs because she was able to prepare simple meals, do laundry, drive, and shop; moderate difficulties in social functioning because she performed activities involving some social interaction and spent time with family and friends; and moderate difficulties in concentration, persistence or pace because she was able to perform some activities "that demand some level of proficiency in this area (*i.e.*, taking care of her son and husband), but cannot perform others (*i.e.*, handling money)," and she needed reminders to take care of her personal needs and to take her medication (R. 24-25).

The ALJ opined that Ms. Begic had the RFC to perform light work that involved unlimited sitting or standing/walking up to 6 hours in an 8-hour workday, but no operation of hand controls or reaching overhead with her left arm, and only occasionally reaching laterally

---

[6]Between the hearing and the date the ALJ issued her opinion, Ms. Begic saw Dr. Zahid a few more times. Notes from her encounters with Dr. Zahid in February and March 2014 are similar to previous encounter notes, indicating that Ms. Begic appeared dysthymic and dysphoric, suffered from PTSD, depression, and panic disorder, and took Xanax, Topamax, Prozac, and Remeron (R. 964-67).

and forward with the left arm, and some additional environmental and postural limitations (R. 25-26). The ALJ also limited Ms. Begic to simple, routine work with occasional contact with coworkers, supervisors, and the public, and demonstrative, not written, work instructions (*Id.*).

The ALJ gave only "some weight" to the opinion of Ms. Begic's treating psychiatrist, Dr. Zahid, that Ms. Begic had "mostly extreme limitations in her ability to perform mental work-related activities" (R. 30). The ALJ found that Dr. Zahid's opinion was "vastly at odds with the remainder of the evidence regarding [Ms. Begic's] mental functioning," including: (1) Dr. Stone's examination; (2) notes from Sherman Hospital "routinely document[ing] mild deficits only;" (3) notes from Ms. Begic's primary care physician "routinely show[ing] normal psychiatric functioning;" and (4) the treatment Ms. Begic received, which the ALJ wrote "consisted mostly of medication management, with no history of psychiatric hospitalization or consistent outpatient treatment" (R. 29-30). In addition, the ALJ found "it significant that [t]here [wa]s no evidence of PTSD in the record from [Ms. Begic's] treatment sources" (*Id.*).

By contrast, the ALJ gave "great weight" to Dr. Oberlander's testimony, finding it "well supported and consistent with the record as a whole" (R. 30). The ALJ agreed with Dr. Oberlander that "the more 'extreme' restrictions assessed by Dr. Zahid would require hospitalization and custodial care," which was "not supported by the overall the record and contrary to Dr. Zahid's own treatment recommendations" (*Id.*). The ALJ gave "limited weight" to Dr. Stone's opinion, because the ALJ stated that his medical source statement -- which rated Ms. Begic's ability to perform various work-related mental demands as mostly "moderate" -- was "not entirely consistent" with treatment records and Dr. Stone's own examination of Ms. Begic, which the ALJ described as "reveal[ing] mostly mild mental deficits" (R. 29-30).

8

The ALJ also found evidence of malingering regarding Ms. Begic's mental impairments (R. 29). The ALJ questioned whether Ms. Begic experienced the Bosnian war because the record contained notes stating that Ms. Begic had worked in the U.S. since 1988 (*Id.*). The ALJ also stated that Ms. Begic "suggested that she was claustrophobic at the hearing, but there is little-to-no evidence of this in the treatment records" (R. 29, 31).

Ultimately, the ALJ found that Ms. Begic could not perform her past relevant work, but that jobs existed in significant numbers in the national economy that she could perform, thus rendering Ms. Begic not disabled from May 1, 2009 through the date of the decision (R. 32-33). After the ALJ issued her opinion, Ms. Begic continued seeing Dr. Zahid, and she submitted those records and letters from Dr. Zahid and herself to the Appeals Council (R. 955-63). On June 1, 2015, the Appeals Council denied her request for review of the ALJ's decision and found that the additional evidence did not provide a basis for changing the ALJ's decision (R. 1-2).

## IV.

"We review the ALJ's decision deferentially only to determine if it is supported by substantial evidence," *i.e.*, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Yurt v. Colvin*, 758 F.3d 850, 856 (7th Cir. 2014) (internal citations and quotations omitted). "Although we will not reweigh the evidence or substitute our own judgment for that of the ALJ, we will examine the ALJ's decision to determine whether it reflects a logical bridge from the evidence to the conclusions sufficient to allow us, as a reviewing court, to assess the validity of the agency's ultimate findings and afford [the claimant] meaningful judicial review." *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014).

In this case, several errors in the ALJ's opinion lead us to conclude that the ALJ failed to build the necessary logical bridge between the evidence and her conclusion that Ms. Begic's

9

PTSD was not severe, and that Dr. Oberlander's opinion was entitled to greater weight than the opinions of Drs. Zahid and Stone. *First*, the ALJ erred in finding that "there [wa]s no documentation of [PTSD in] the file for any durational period" and that "[t]here [wa]s no evidence of PTSD in the record from [Ms. Begic's] treatment sources" (R. 23, 29). To the contrary, Dr. Zahid consistently listed PTSD as one of Ms. Begic's diagnoses for longer than the required 12 months; in addition to one notation of PTSD in May 2011, Dr. Zahid listed PTSD as a diagnosis consistently from April 2012 through at least March 2014. The Commissioner attempts to argue that these erroneous statements were harmless because the ALJ ultimately addressed Dr. Zahid's treatment notes. However, the ALJ herself described the purported absence of evidence of PTSD to be "significant" to her determination (R. 29). We cannot be confident that the ALJ would have reached the same conclusion about Ms. Begic's PTSD had she not erroneously relied on a lack of evidence of PTSD to support her determination. Therefore, this error was not harmless. *See Hill v. Colvin*, 807 F.3d 862, 869 (7th Cir. 2015).

*Second*, the ALJ did not adequately explain her decision to credit the opinion of Dr. Oberlander, a non-examining medical expert, over the opinions of Ms. Begic's treating psychiatrist and an examining agency physician. "Although an ALJ is not required to accept the views of an agency examining physician if there is a contrary opinion from a later reviewer or other compelling evidence, the ALJ still must have a good explanation for rejecting or discounting the examining physician's opinion." *Czarnecki v. Colvin*, 595 F. App'x 635, 642 (7th Cir. 2015) (citing *Beardsley v. Colvin*, 758 F.3d 834, 839 (7th Cir. 2014)). Here, the ALJ found that Dr. Stone's opinion that Ms. Begic had mostly moderate mental limitations was inconsistent with the medical record and Dr. Stone's own examination of the claimant, which the ALJ described as revealing "mostly mild mental deficits" (R. 30). However, the ALJ's

description of Dr. Stone's examination was inaccurate, undermining the ALJ's explanation for discounting it. Dr. Stone reported that Ms. Begic appeared depressed, tearful, anxious, dysthymic and dysphoric, and had difficulty concentrating during the examination. Dr. Stone diagnosed her with PTSD, major depression and generalized anxiety disorder with panic attacks. By any reasonable measure, these are not "mostly mild mental deficits."

Moreover, the ALJ discounted both Dr. Stone's and Dr. Zahid's opinions on the grounds that they were inconsistent with the other evidence in the record. Specifically, the ALJ noted that Ms. Begic's treatment "consisted mostly of medication management, with no history of psychiatric hospitalization or consistent outpatient treatment," which did not support the extreme functional limitations assessed by Dr. Zahid (R. 29). When controlling weight is not given to a treating physician's opinion, an ALJ must offer "good reasons" for doing so, after considering: "(1) whether the physician examined the claimant, (2) whether the physician treated the claimant, and if so, the duration of overall treatment and the thoroughness and frequency of examinations, (3) whether other medical evidence supports the physician's opinion, (4) whether the physician's opinion is consistent with the record, and (5) whether the opinion relates to the physician's specialty." *Brown v. Colvin*, No. 16-1066, 2016 WL 7404758, at *3 (7th Cir. Dec. 22, 2016). Here, the ALJ failed to note that the examinations of Ms. Begic's treating psychiatrist and state agency psychologist were in certain respects consistent with each other. Both Dr. Zahid and Dr. Stone observed Ms. Begic's trouble concentrating, depression, tearfulness, anxiety, dysthymia and dysphoria, and both doctors listed PTSD as a diagnosis, along with depression and anxiety disorder with panic attacks. In addition, while the ALJ explained that she accepted Dr. Oberlander's testimony that Dr. Zahid's treatment -- limited to medication management -- was not consistent with extreme functional limitations, the ALJ did not -- and indeed, could not,

11

in light of the evidence of Dr. Zahid's treatment -- support her statement that Ms. Begic failed to receive consistent outpatient treatment.

*Third*, the ALJ's discussion of Ms. Begic's claim that she suffered from PTSD related to her experiences as a refugee of the Bosnian war was inadequate. The ALJ found that Ms. Begic's "timetable could be questionable" because the Bosnian war lasted from 1992 to 1995, but a note in the record states that Ms. Begic had worked in the United States since 1988 (R. 29). The ALJ did not attempt to resolve this question by probing the veracity of Ms. Begic's presence in Bosnia during the war through documents in the record (which Ms. Begic contends show that her earnings in the U.S. began in 1997, Pl.'s Mem. at 9-10), or through Ms. Begic's testimony at the hearing. Instead, the ALJ appears to have concluded that Ms. Begic in fact was not in Bosnia during the war, and then speculated that while Ms. Begic "may have some effect by this war due to family or friend relation," her more attenuated connection to the war would not support the severity of PTSD that Ms. Begic alleged (R. 29). The ALJ's speculation here -- both about the causes of PTSD and the circumstances of Ms. Begic's arrival in the United States -- is not supported by substantial evidence.

## **CONCLUSION**

For the reasons stated above, we grant Ms. Begic's motion to remand (doc. # 19). The case is remanded for further proceedings consistent with this opinion. The case is terminated.

ENTER:

SIDNEY I. SCHENKIER
**United States Magistrate Judge**

**DATE: January 30, 2017**